FILED'06 MAR 14 17:30USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUAN AGUILERA-CORONA,  )
                       )
        Plaintiff,     )          Civil No. 04-6283-AA
                       )          OPINION AND ORDER
        vs.            )
                       )
KEFRO LLC AND KOSTERCO, INC., )
an Oregon Corporation, d/b/a  )
KAL KUSTOM ENTERPRISES, and   )
BARRETT BUSINESS SERVICES,    )
INC., a Maryland Corporation, )
                       )
        Defendants.    )
_____)

Kevin T. Lafky
Larry L. Linder
LAFKY & LAFKY
429 Court Street NE
Salem, Oregon 97301
     Attorneys for Plaintiff

Richard D. Senders
Rose, Senders & Bovarnick, LLP
1205 NW 25th Avenue
Portland, Oregon 97210
     Attorney for Defendants

Page 1 - OPINION AND ORDER

AIKEN, Judge:

In this employment termination case, plaintiff Juan
Aguilera-Corona alleges racial and sexual discrimination, *quid
pro quo* sexual discrimination, retaliation, wrongful discharge,
and intentional infliction of emotional distress against his
former employers, defendants Kal Kustom Enterprises (Kal Kustom)
and Barrett Business Services (BBS). The case is before this
court on defendants' motion for summary judgment. Defendants'
motion is granted in part and denied in part.

## Standards

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56©). Substantive law on an issue determines the materiality of
a fact. T.W. Electrical Service, Inc. v. Pacific Electrical
Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determines the authenticity of a
dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence

of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 323 (1986).  If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine
issue for trial.  <u>Id.</u> at 324.

Special rules of construction apply when evaluating summary
judgment motions: (1) all reasonable doubts as to the existence
of genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to
the nonmoving party.  <u>T.W. Electrical</u>, 809 F.2d at 630.  In an
employment discrimination case, "if  a rational trier of fact
could, on all the evidence, find that the employer's action was
taken for impermissibly discriminatory reasons," summary judgment
for the moving party is inappropriate.  <u>Wallis v. J.R. Simplot</u>,
26 F.3d 885, 889 (9th Cir. 1994).

<u>Facts</u>

Plaintiff Corona is a Hispanic male of Mexican origin.  He
was hired by defendant Barrett Business Services ("BBS") on June
10, 2003, and was assigned to work for Kal Kustom Enterprises
("Kal Kustom").  After about three months, or 100 days, Kal
Kustom discharged Corona for poor work performance.  Corona
asserts that he was subjected to racial and sexual
discrimination, *quid pro quo* sexual discrimination, wrongful

discharge, retaliation, and intentional infliction of emotional distress. He seeks compensation for lost wages, pain and suffering, and mental distress.

Corona states that he was subjected to various unpleasant incidents at work, which he alleges were based on racial and/or sexual discrimination. While the events are disputed by the parties, Corona asserts that one of his supervisors, Hadley, once or twice hit him on the hand with a board; twice poked him in the back of the leg or buttock area with a broom; twice pushed a pencil or pen inside the back of his pants between his buttocks while he was bending over working; made him touch the back of Hadley's pants to see how sweaty they were; pinched his right breast and pulled his nipple, causing soft tissue bruising; told him if he wanted to listen to Spanish music he should "go back to Mexico;" made derogatory comments about his food and stuck his finger in Corona's soup on one occasion; called him "big head" and "ugly;" and made him do more difficult work than other, non-Hispanic workers.

Corona also asserts that another supervisor, Weaver, told him on his first day of work that if Corona did not punch his time card correctly, Weaver would "kick his ass." Corona Aff., ¶. 5.

After Hadley pinched and pulled Corona's breast, Corona went to see a doctor, who prescribed ice and ibuprofen for pain

and swelling.  At that time, Corona filed a worker's compensation claim and complained to another one of his supervisors about Hadley's conduct.  Hadley was placed on a four day work suspension as a result of the incident, and returned to work on "permanent probation."  Two weeks after Corona complained to the supervisor about Hadley's conduct, Kal Kustom discharged Corona.

Kal Kustom asserts that Corona's work was slow, and that during his relatively brief term of employment, Corona was transferred three times in order to find a position where he would be able to keep up with the level of work expected.  Kal Kustom states that Corona was warned that his slow performance was not acceptable.  Corona denies that he was ever permanently transferred to a different job, or that he ever received a written or oral warning or notice that his work was below standard.  Approximately ninety percent of Kal Kustom workers are male, and about thirty to forty percent of the workforce are Hispanic.

<u>Discussion</u>

1.  Failure to Exhaust

Defendant BBS moves to dismiss all claims against it on the basis that Corona failed to file an EEOC complaint against it.  A plaintiff must file a charge with the EEOC against the allegedly discriminatory party before bringing a Title VII action in federal court.  42 U.S.C. § 2000e-5.  The Ninth Circuit has

Page 5 - OPINION AND ORDER

concluded that under certain circumstances a plaintiff may
maintain a Title VII civil action against defendants who were not
named in the prior administrative complaint, as long as those
defendants were involved in the acts giving rise to the EEOC
claims.  Sosa v. Hiraoka, 920 F.2d 1451, 1458-1459 (9th Cir.
1990)(quoting Wrighten v. Metropolitan Hosp., 726 F.2d 1346, 1352
(9th Cir. 1984)).  See also Carter v. Smith Food King, 765 F.2d
916, 924 n. 10 (9th Cir. 1985)(listing cases where federal action
was sustained against defendants not specifically named in the
administrative complaint).  All of the cases where the federal
action was sustained, however, involved an administrative charge
which apprised EEOC and the parties of the acts alleged to be
discriminatory.

Here, while Corona did mention BBS in the EEOC complaint, he
failed to include a single fact or allegation against BBS.
Unlike Sosa's administrative complaint, cited above, which
specifically alleged named administrators of the respondent
District that participated in the discriminatory acts, 920 F.2d
at 1459, Corona's EEOC complaint did not alert the EEOC or BBS to
what, if any, discriminatory practices BBS may have committed.
Corona's EEOC complaint failed to allege facts from which it
could be inferred that BBS had violated Title VII, therefore the
Title VII complaints against BBS are dismissed.  This court
retains jurisdiction over the remaining claims against BBS on the

basis of diversity jurisdiction.  28 U.S.C. § 1332.

2.  Hostile Work Environment

In order to survive a summary judgment motion, a hostile work environment plaintiff must show that the complained of conduct was 1) based on sex or race; 2) so "severe or pervasive" as to alter the conditions of employment and create an abusive working environment; and 3) was unwelcome.  Faragher v. Boca Raton, 524 U.S. 775, 786 (1998).  The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Id. at 788 (citation and internal quotation marks omitted).  However, under Oregon law, a plaintiff need only show that an intimidating, hostile or offensive working environment was created.  Fred Meyer, Inc. v. Bureau of Labor & Indus., 152 Or.App. 302, 307, 954 P.2d 804 (1998).  Courts apply an objective standard in determining whether conduct has created an intimidating, hostile, or offensive working environment, that is, whether a reasonable person would arrive at that conclusion.  Id.

A.  Sexual Harassment

Corona states that his supervisor, Hadley, put a pen down the back of his pants on one or two occasions, scratched and pulled at his right breast, and poked him with a broomstick in the back of his legs and buttock area once or twice.  Corona also

Page 7 - OPINION AND ORDER

states that he was "forced" to touch Hadley's buttocks on one occasion and that he complied out of fear.  Corona states in his deposition that he was not sure what motivated Hadley's actions. *See* Corona Depo. pp. 34, 45, 55, 66.  Corona did, however, hint that he thought Hadley might be gay, but offered no support for this assertion other than rumor.  Corona Depo. pp. 59-60.  Ninety percent of Kal Kustom employees are male.

Defendants respond that Corona himself often engaged in similar "horseplay" around the work site and that Hadley's actions amount to no more than horseplay.  While Corona denies ever engaging in horseplay with Hadley, Corona Aff. ¶ 19, he admits to having engaged in horseplay with another employee, Carrera-Arroyo, which ultimately was deemed inappropriate by management.  Corona states that he and Arroyo "played together," and that Arroyo complained to a supervisor about Corona touching his buttocks.  Corona Depo. pp. 160-161.  The supervisor, Garcia, told Corona that Arroyo had complained about Corona's touching him, and instructed Corona to stop "playing" with Arroyo.  Corona complied and asked that Arroyo not play with him either, and the matter was resolved.

While same sex harassment or discrimination is actionable under Title VII, only behavior that is so objectively offensive as to alter the "conditions" of the plaintiff's employment is forbidden.    Oncale v. Sundowner Offshore Services, Inc., 523

U.S. 75, 81 (1998). This distinction is critical to ensure that courts and juries do not mistake ordinary socializing, such as male-on-male horseplay, for "conditions of employment." Id. This analysis must include common sense and a sensitivity to social context of the workplace. Id. at 81-82. Factors to be considered in this analysis include, but are not limited to, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

The Ninth Circuit applied this rule in Rene v. MGM Grand Hotel, Inc., 305 F.3d 1061 (9th Cir. 2002). Rene, a male employee, provided extensive evidence that his male coworkers and supervisor whistled at him and blew kisses to him, called him "sweetheart" and "muñeca" (Spanish for "doll"), told sexual jokes and gave him sexually oriented "joke" gifts, and forced him to look at pictures of naked men having sex. In addition, Rene alleged that on "more times than [he] could possibly count," his coworkers caressed and hugged him, grabbed his crotch, and poked their fingers in his anus through his clothing. Rene, 305 F.3d at 1064. Finding that the offensive conduct was clearly sexual and discriminatory, the court held that Rene had alleged a physical assault of a sexual nature sufficient to survive a

Page 9 - OPINION AND ORDER

defense motion for summary judgment. Id. at 1067-68.

Conversely, in Bahri v. Home Depot USA, Inc., 242 F.Supp.2d 922 (D. Or. 2002), the court held that a supervisor's actions toward an employee were not "because of sex" and were insufficient to "alter the conditions of employment," and therefore granted defendant's summary judgment motion.  Plaintiff in that case alleged that her supervisor repeatedly referred to her as "missy" and to other female employees as "girls;" yelled in her face and ordered her into the office without justification in front of customers and coworkers; belittled her ideas and suggestions; made off-color remarks "in-passing" to male associates; once asked her why she was unable to "get it on the computer" with respect to learning a particular software program; repeatedly made unwelcome comments about her style of dress, her hair, and shoes; and questioned and made unwelcome comments about her alleged relationship with a male coworker.  242 F.Supp.2d at 950.  The court found that "missing from the record is any evidence that [plaintiff] was subjected to overtly sex-based comments or actions such as unwelcome touching, comments about the female anatomy or her anatomy in particular, requests for dates or other sexual favors, or lewd or sexual remarks in her presence."  Id. at 951.  The court found that there was no evidence that the "off-color" remarks made "in-passing" were sufficiently frequent or severe enough to support a hostile work

Page 10 - OPINION AND ORDER

environment claim. Id.

Here, Corona presents sufficient evidence to withstand summary judgment showing that Hadley's actions were "because of sex." Corona alleges that Hadley grabbed him, specifically "scratched and pulled" at Corona's nipple with enough force to cause bruising; Hadley put a pen down the back of Corona's pants; Hadley poked Corona with a broomstick in the back of his legs and buttock area once or twice, and Hadley "made" Corona touch Hadley's buttocks and Corona reports that he complied "out of fear." Applying the Supreme Court's factors in Harris, throughout the 100 days that Corona was employed by defendants, he was subjected to a number of physical actions by Hadley. Hadley's actions could be considered both physically threatening and humiliating, and assumed to unreasonably interfere with Corona's work performance. Harris, 510 U.S. at 23. Further, unlike Bahri, plaintiff here does offer evidence of overtly sex-based actions such as unwanted touching. 242 F.Supp.2d at 951. Moreover, the number of incidents reported by plaintiff over such a short time period (100 days) qualifies as sufficiently frequent or severe enough to support a hostile work environment claim. Id.

These allegations support plaintiff's claim of sexual and discriminatory conduct by Hadley, sufficient to survive a summary judgment motion. Defendants' motion for summary judgment is

Page 11 - OPINION AND ORDER

therefore denied with respect to the hostile work environment sex
discrimination claim under both federal and state law.

B.  Racial Harassment

     Hostile work environment claims based on racial harassment
are reviewed under the same standard as Title VII claims based on
sexual harassment.  Faragher, 524 U.S. at 786-787.  In order to
survive summary judgment, Corona must show the existence of a
genuine factual dispute as to 1) whether a reasonable Mexican or
Hispanic man would find the workplace so objectively and
subjectively racially hostile as to create an abusive working
environment; and 2) whether Kal Kustom failed to take adequate
remedial and disciplinary action.  McGinest v. GTE Service
Corp.,360 F.3d 1103, 1112 (9th Cir. 2004).

     Corona states that Hadley gave him more difficult work than
Caucasian employees; smashed his sandwich, stuck his fingers in
Corona's soup, and said Corona's food looked like garbage, which
Corona took as an insult to his culture; scratched and pulled
Corona's right breast, resulting in soft tissue bruising; struck
Corona on the hands and buttocks with a board; called Corona "big
head" and "ugly;" and prevented Corona from listening to Spanish
music.  When Corona questioned Hadley's order, he was told, "if
you want to listen to that music, go back to Mexico."  Thirty to
forty percent of Kal Kustom employees are Hispanic.

     Again assuming all allegations are true for purposes of

Page 12 - OPINION AND ORDER

summary judgment, Corona has met his burden by showing the existence of a genuine factual dispute as to (1) whether a reasonable Hispanic or Mexican man would find the workplace so objectively and subjectively hostile as to create an abusive working environment; and (2) whether Kal Kustom failed to take adequate remedial and disciplinary action.

First, the court acknowledges that stray remarks are insufficient to violate Title VII. Clark County School Dist. v. Breeden, 532 U.S. 268, 271 (2001). Here, however, Corona alleges a series of physical and verbal events directed at him by his supervisor within the short period of time that he was employed at Kal Kustom. Corona alleges a range of offensive events, including the radio incident described above which Corona alleges has a direct connection to Corona's race. The other actions described by Corona include incidents of both verbal and physical abuse by his supervisor, Hadley. In addition, Corona states that he was made to do things that he never saw a Caucasian do, including things that he believed were calculated to make him uncomfortable, such as sweeping an already clean driveway on a very hot day. Corona Aff. ¶ 9. Drawing all inferences in Corona's favor, I find that these incidents are sufficient to survive summary judgment on the issue of whether the alleged conduct was "sufficiently severe or pervasive to alter the conditions of the victim's working environment and create an

abusive working environment."  McGinest, 360 F.3d at 1119.

Second, Corona has shown the existence of a genuine factual

dispute as to whether Kal Kustom failed to take adequate remedial

and disciplinary action.  Although there is evidence that Kal

Kustom took immediate steps to address the situation once Corona

brought his complaints to the attention of Kal Kustom, Corona has

alleged and there is evidence in the record to show that this was

not the first time that Hadley had injured a worker during

"horseplay" activities.  In April 2003 (the same year that Corona

worked for and was discharged from Kal Kustom), Hadley physically

injured another worker who complained of a back injury as a

result of Hadley's actions. Hadley was suspended for three days

without pay and was placed on a 30-day probation.  In addition,

Hadley was warned that if he engaged in similar behavior again he

would be terminated without consideration.  Schatz Depo. 28-30.

Although the former incident apparently did not involve a

Hispanic worker, the fact that Hadley had been disciplined only a

few months before for engaging in dangerous "horseplay"

activities shows that Kal Kustom's response to the incident with

Corona was not "reasonably calculated to end the harassment."

McGinest, 360 F.3d at 1120.  Because plaintiff has shown the

existence of a genuine factual dispute as to whether Kal Kustom

took adequate remedial action, defendants' motion for summary

judgment is denied on the racially hostile work environment

Page 14 - OPINION AND ORDER

claim.

3.  Disparate Treatment

Title VII and Oregon law make it illegal for an employer to discharge or otherwise discriminate against an individual because of national origin or gender.  42 U.S.C. § 2000e *et seq*; ORS 659A.030.  "Under Title VII, an individual suffers disparate treatment 'when he or she is 'singled out and treated less favorably than others similarly situated on account of race.''"  McGinest, 360 F.3d at 1121.  For a prima facie case of disparate treatment, Corona must offer evidence that gives rise to an inference of unlawful discrimination, either through the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) or with direct or circumstantial evidence of discriminatory intent.  Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003). The only evidence Corona offers of discriminatory intent is Hadley's remark to "go back to Mexico." While Hadley was one of Corona's supervisors and recommended termination, the final termination decision rested with General Manager Duane Schatz.  Therefore, Corona must show a nexus between Hadley's remark and Schatz's subsequent employment decision.  To the extent that Hadley's remarks and Schatz's knowledge of prior conflicts between Corona and Hadley constitute circumstantial evidence of discriminatory intent, this evidence is insufficient to make out a prima facie case.  In making the

employment decision, Schatz (1) relied on the observations of
another supervisor, Weaver, that Corona was not staying on task
while working; and (2) did not consult with Hadley about the
decision to terminate Corona.  Therefore, Corona must proceed
under the McDonnell Douglas framework.  *See* Vasquez v. County of
Los Angeles, 349 F.3d at 641-642 (finding insufficient
circumstantial evidence of discriminatory motive where supervisor
making the employment decision made an independent investigation
and plaintiff presented no evidence that discriminatory animus
motivated that decision).

Where a plaintiff fails to show discriminatory motive,
courts will apply the McDonnell Douglas test.  Under that test, a
plaintiff alleging disparate treatment on the basis of sex or
race must show 1) he is a member of a protected class; 2) he was
performing satisfactorily; 3) he was the object of an adverse
employment action; and 4) similarly situated individuals were
treated more favorably.  McDonnell Douglas, 411 U.S. at 802.  If
a plaintiff can satisfy the four prong McDonnell Douglas test, we
presume unlawful discrimination.  The burden then shifts to the
employer to provide a legitimate, non-discriminatory reason for
the employment action.  Vasquez, 349 F.3d at 641.

Here the parties do not dispute that Corona is a member of a
protected class.  Nor does defendant dispute that Corona suffered
an adverse employment action.  Defendant argues that Corona

cannot show that he was performing his job satisfactorily, and presents evidence in the form of supervisors' testimony stating that Corona's work performance was unsatisfactory. Defendants, however, have offered no documentary evidence, such as performance reports or evaluations, that Corona was performing unsatisfactorily. Further, Corona asserts that he was never warned, orally or in writing, that his performance was substandard. For the minimal showing needed to establish a prima facie case, it is sufficient that Corona states that he was performing as well as his co-workers and that Kal Kustom presents no documentary evidence that Corona's job performance was not satisfactory. Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 659-660 (9th Cir. 2002).

Finally, Corona must show that similarly situated employees outside the protected class were treated more favorably. Corona has not asserted that women were treated more favorably than men. He has stated that he was treated poorly and that he did not see any Caucasian employee treated this way. Corona also, however, states that he did not see any other Hispanic man treated as he was. For the purposes of summary judgment, we may assume that Caucasian employees were treated more favorably as Corona asserts.

Assuming for the purposes of summary judgment that Corona has met his prima facie burden, the burden then shifts to Kal

Kustom to show a legitimate, non-discriminatory reason for discharging Corona. Kal Kustom asserts that Corona was discharged for poor work performance. Having provided such a reason, the burden shifts back to Corona to show that Kal Kustom's reason is a pretext for discrimination. Plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Chuang v. University of California Davis, 225 F.3d 1115, 1127 (9th Cir. 2000).

Here Corona has provided no direct evidence of discriminatory motive and relies on an indirect showing of pretext. When a plaintiff relies on circumstantial evidence to show pretext, that evidence must be "specific" and "substantial" to create a triable issue of fact. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998). The fact that no records exist as to Corona's alleged poor work performance provides circumstantial evidence that he was not, in fact, terminated for poor performance. This evidence creates a triable issue of fact as to whether Kal Kustom intended to discriminate on the basis of sex or race, and therefore Kal Kustom's summary judgment motion is denied on this claim.

Page 18 - OPINION AND ORDER

4. Retaliation

The plaintiff's prima facie burden in bringing a retaliation claim requires him to show 1) he was engaged in a protected activity; 2) he suffered an adverse employment action; and 3) a causal connection between the protected activity engaged in and the adverse action suffered. <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1375 (9th Cir. 1987). Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, "such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." <u>Id.</u>

Corona complained to his supervisors about harassing behavior at the work site. Defendants argue that because the activity complained of was not unlawful discrimination or harassment, Corona did not engage in a protected activity. The Ninth Circuit, however, has held that an employee's complaint need only be based on a "reasonable belief" that the employer has engaged in an unlawful employment practice. *See* <u>Trent v. Valley Elec. Ass'n Inc.</u>, 41 F.3d 524, 526-527 (9th Cir. 1994)(employee is justified in believing that Title VII would protect her from offensive remarks endured at a mandatory meeting).

Similarly, Corona is justified in believing that Title VII would protect him from enduring unwelcome physical contact which

Page 19 - OPINION AND ORDER

he believed occurred due to his race. Corona suffered an adverse
employment action when he was discharged by Kal Kustom, and
effectively discharged by BBS. The proximity in time between
these two events is sufficient to show a causal connection and
satisfy the third element of the prima facie case.

Where the plaintiff meets the burden of establishing the
prima facie case for retaliation, the burden shifts to the
defendant employer to show a legitimate, non-retaliatory
explanation for its decision. Yartzoff, 809 F.2d at 1375. Here,
defendant Kal Kustom has asserted that it discharged Corona for
poor work performance. Where the defendant articulates a
legitimate, non-retaliatory reason for the employment decision,
the burden shifts back to the plaintiff to show that the alleged
explanation is a pretext for impermissible retaliation. Id. at
1377. The Ninth Circuit in Yartzoff noted that "a grant of
summary judgment, though appropriate when evidence of
discriminatory intent is totally lacking, is generally unsuitable
in Title VII cases in which the plaintiff has established a prima
facie case because of the 'elusive factual question' of
intentional discrimination." Id. (quoting Miller v. Fairchild
Indus., Inc., 797 F.2d 727, 732 (9th Cir. 1986)). Corona has
created a material issue of fact as to whether defendants had any
discriminatory intent in terminating him because it was Hadley
who mistreated him and Hadley who recommended his discharge.

Page 20 - OPINION AND ORDER

Therefore, defendants' motion for summary judgment on plaintiff's retaliation claim is denied.

5.   Wrongful Discharge

     Defendants next argue that Corona's wrongful discharge claim is precluded by adequate statutory remedies and that no causal connection exists between the alleged protected activity and Corona's termination.

     Corona has asserted discrimination on the basis of race and sex under Title VII and Or. Rev. Stat. § 659A.030(b).   Title VII and Or.Rev.Stat. § 659A.885 allow only limited damages for discriminatory conduct and do not provide an adequate remedy. While the state statutes do not provide for non-economic damages and the federal statute has a cap on damages, the tort remedy for wrongful discharge entitles the plaintiff to the full range of economic damages as well as damages "for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care."   Holien v. Sears, Roebuck & Co., 298 Or. 76, 97, 689 P.2d 1292 (1984).   Corona's wrongful discharge claim is therefore not precluded by adequate statutory remedies.

     Under Oregon tort law, a claim for wrongful discharge for terminated at-will employees is available in two circumstances: 1) discharge for fulfilling a societal obligation or public duty; and 2) discharge for exercising a job-related right of important

Page 21 - OPINION AND ORDER

public interest. Delaney v. Taco Time Int'l, 297 Or. 10, 15-16, 681 P.2d 114 (1984). Corona asserts that he was discharged for complaining to supervisors about unwelcome physical contact in the work place. Corona was discharged from Kal Kustom within two weeks of reporting the unwanted contact to his supervisors. This time proximity is sufficient to raise a genuine issue of material fact as to whether Corona's discharge from Kal Kustom was wrongful.

Corona assumed he was also discharged by BBS at the time he was fired from Kal Kustom. Despite defendants' allegation that Corona was not also discharged by BBS, defendants have failed to provide evidence showing that Corona was not discharged as he assumed. It was therefore reasonable for Corona to assume he was also discharged from BBS. Viewing the evidence in the light most favorable to Corona, I find genuine issues of material fact as to whether Corona's discharge was wrongful. Therefore, defendants' motion for summary judgment is denied as to plaintiff's wrongful discharge claim.

6. Quid Pro Quo Discrimination

In order to establish a prima facie case for quid pro quo discrimination, Corona must show that an individual "explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." Heyne v. Caruso, 69 F.3d 1475, 1478 (9th Cir.

Page 22 - OPINION AND ORDER

1995)(adopting the test proposed in <u>Nichols v. Frank</u>, 42 F.3d

503, 511 (9th Cir. 1994)).  The EEOC guidelines define quid pro

quo sexual harassment as:

> Unwelcome sexual advances, requests for sexual favors, and
> other verbal or physical conduct of a sexual nature ... when 1)
> submission to such conduct is made either explicitly or
> implicitly a term or condition of an individual's employment,
> [or] 2) submission to or rejection of such conduct by an
> individual is used as the basis for employment decisions
> affecting such individual[.]

29 C.F.R. § 1604.11(a)(1)-(a)(2) (1994).

I find no evidence that Corona's continued employment was in

any way conditioned on his submission to sexual conduct.  While

it is not evident that there was any sexual motivation behind

Hadley's actions towards Corona, there is evidence that when

horseplay or touching was not wanted, the management at Kal

Kustom swiftly stepped in to stop the unwanted behavior.  When a

fellow employee complained that Corona touched him in an

unwelcome manner, Kal Kustom supervisors stepped in to stop the

conduct by telling Corona that the other employee had complained

about his actions and that he must immediately cease the

unwelcome contact.  Corona complied, and the matter was resolved.

This event provides evidence that where unwelcome contact

existed, of a sexual or non-sexual nature, and was brought to the

attention of Kal Kustom supervisors, the problem was

appropriately and immediately addressed.  There is no evidence

that Kal Kustom conditioned Corona's employment on his submission

to unwelcome conduct.

In addition, there is no evidence to support a claim of *quid pro quo* discrimination on the part of BBS, the employment agency. While it is possible that Corona assumed he had been discharged by BBS after he received no further offers of employment through them, there is no evidence to suggest that anything which may have occurred on the Kal Kustom site was in any way related to BBS's employment practices.  Corona does not allege any sexual actions by BBS staff, nor does he point to any reason why BBS would condition Corona's continued employment on his submission to unwelcome sexual conduct at the Kal Kustom site.  The defendants are entitled to summary judgment on Corona's *quid pro quo* discrimination claim.

7.  Intentional Infliction of Emotional Distress (IIED)

Finally, defendants move for summary judgment on Corona's IIED claim.  Under Oregon law, in order to prove intentional infliction of emotional distress, a plaintiff must show 1) the defendant intended to inflict severe emotional distress on the plaintiff; 2) defendant's acts were the cause of plaintiff's severe emotional distress; and 3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.  McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995).  Oregon courts have held that a plaintiff must allege that the defendant acted with the purpose of inflicting severe

emotional or mental distress on the plaintiff.  "It is not enough
that [the defendant] intentionally acted in a way that causes
such distress."  Id. at 544 (quoting Patton v. J.C. Penney Co.,
301 Or. 117, 122, 719 P.2d 854 (1986)).

Corona alleged only that Hadley's acts were intentional and
that defendants "knew or should have known" that his acts would
cause severe emotional distress.  Corona did not allege that the
conduct of either defendant was undertaken for the purpose of
inflicting severe emotional distress, nor is there evidence that
defendants undertook their conduct for that purpose.  As such,
Corona has failed to meet his burden of proof for the first
element of the intentional infliction of emotional distress claim
under Oregon law.  Summary judgment is granted for defendants on
plaintiff's IIED claim.

Conclusion

Defendants' motion for summary judgment (doc. 32) is granted
in part and denied in part as follows: defendants' motion
regarding *quid pro quo* discrimination, and intentional infliction
of emotional distress is granted; defendants' motion regarding
hostile work environment on the basis of sex and race, disparate
treatment, retaliation, and wrongful discharge is denied.  All
Title VII claims against BBS are dismissed for failure to exhaust
administrative remedies.  Defendants' request for oral argument
is denied.

Page 25 - OPINION AND ORDER

IT IS SO ORDERED.

Dated this _14_ day of March 2006.


_____
Ann Aiken
United States District Judge

Page 26 - OPINION AND ORDER